234 N.J. Super. 128 (1989)
560 A.2d 683
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, PLAINTIFF-RESPONDENT,
v.
VIRGINIA DALTON AND CHIROPRACTOR DANIEL J. DALTON, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Submitted April 10, 1989.
Decided May 3, 1989.
*129 Before Judges PETRELLA, SHEBELL and LANDAU.
Robert P. Glickman, attorney for appellants (Thomas F. Dorn, Jr., on the letter brief).
Soriano, Henkel, Biehl, Matthews, Marinello & Riva, attorneys for respondent (William J. Soriano, on the letter brief).
The opinion of the court was delivered by LANDAU, J.A.D.
This matter came to us on appeal originally from that part of an order of the Law Division which required defendant-appellant *130 Chiropractor Daniel J. Dalton (Daniel) "to submit a Verification/Certification of his treatment of the defendant, Virginia Dalton, pursuant to N.J.S.A. 17:33A-1 et seq. and N.J.A.C. 11:16-1.1 et seq.," failing which, the plaintiff-respondent State Farm Mutual Automobile Insurance Company (State Farm) was excused from its obligation to pay Personal Injury Protection (PIP) benefits to defendant-appellant Virginia Dalton (Virginia).
Virginia was injured in an automobile accident on February 24, 1987. She allegedly received from her husband, Daniel, "straight chiropractic" treatment (i.e. non-medical and non-technologically implemented or diagnosed) consistent with their religious beliefs as Essene Christians and members of the Congregation of Universal Wisdom. Virginia says that by check dated May 18, 1987, she paid Daniel $4,490 for the chiropractic care he provided, evidenced by paid receipts which detailed the services rendered.
After Virginia submitted a PIP benefit claim for that chiropractic care to her automobile insurance carrier,[1] State Farm demanded that Daniel submit to it a verification/certification of care pursuant to N.J.S.A. 17:33A-1 et seq. and that he permit inspection of his records. State Farm also requested that Virginia submit to a physical examination.
When the insurance carrier made these requests for certification, inspection of records and examination, N.J.S.A. 17:33A-1 et seq. was in effect, as were regulations adopted by the Department of Insurance in aid of the legislative effort to curb fraudulent insurance claims.
When Daniel and Virginia refused to comply, State Farm commenced this action in the Law Division in January 1988 by a verified complaint and order to show cause. N.J.S.A. 17:33A-6 had just been amended effective December 24, 1987, to delete subsection b. The suit also invoked, however, the policy and provisions of N.J.S.A. 39:6A-13, part of the PIP statute.
*131 Following hearing on affidavits, the trial judge ordered Daniel to permit inspection and copying of his records respecting Virginia's treatment and ordered Virginia to submit to physical examination. He also ordered Daniel to submit the requested verification/certification of treatment. Daniel asked for reconsideration of the verification/certification portion of the order, and when that was declined, this appeal, initially limited to that issue, was taken.
State Farm moved for summary disposition, contending that the single issue involved only interpretation of N.J.S.A. 17:33A-6(b). We declined to rule summarily under R. 2:8-3(b).
The Notice of Appeal has since been amended to add an assertion that N.J.S.A. 39:6A-13(d) is unconstitutional because it requires Virginia to be examined by a medical physician contrary to her religious beliefs. Appellants also now contend that the trial judge should have been limited by the legislative deletion of N.J.S.A. 17:33A-6(b). Although it occurred subsequent to the accident, treatments, and State Farm's demands for examination and record verification, the deletion was effective prior to the entry of the order in this case.
The subsection deleted was directed generally at discouraging insurance fraud. It required the Commissioner of Insurance to "promulgate rules and regulations requiring any or all persons or practitioners seeking payment for services or materials which will be reimbursed by an insurer to verify, under oath, that the services and materials furnished were necessary and were, in fact, furnished." N.J.S.A. 17:33A-6(b) (deleted by amendment 1987). It also provided that such verification was "a condition precedent to payment by the insurer or recourse against the insured." Regulations pursuant to that statute were promulgated as N.J.A.C. 11:16-1.2(a) and 11:16-1.3, but these were repealed effective July 18, 1988, consistent with the legislative deletion. 20 N.J.R. 1720(b) (July 18, 1988). The statement appended to the amending statute says:

*132 The provision of law which this bill eliminates was originally enacted as a means of controlling fraud by making providers attest that services for which reimbursement was being sought had actually been performed. In practice however, the procedure was deemed by the Department of Insurance to be cumbersome and unworkable. Thus, the department has asked that the requirement for verification be deleted. [Senate Labor, Industry and Professions Committee Statement, A. No. 3434 (reprinted in Annotations following N.J.S.A. 17:33A-6).]
The order under review was signed March 17, 1988, after amendment of the insurance fraud statute but before repeal of the regulations which required verification of treatment. Enforcement of the verification portion of the order has been stayed pending appeal.
Appellants raise both legal and constitutional objections to the court's order.
In the first of two briefs submitted by appellants, it was conceded that the amendment which repealed N.J.S.A. 17:33A-6(b) is not applicable to the present appeal. Appellants there rely largely on the phraseology of the legislation, "requiring any or all persons or practitioners seeking payment for services or materials which will be reimbursed by an insurer to verify ... that the services and materials were necessary and were, in fact, furnished." See N.J.S.A. 17:33A-6(b) (deleted by amendment 1987). Appellants argue that Chiropractor Dalton who provided the services is not seeking payment from State Farm, but that it is Virginia, who furnished receipts from her husband to evidence that services were performed and paid for, who seeks payment. In consequence, they urge, the statute and regulation are not applicable. They also argue that the detailed receipts provide all the information which would be contained in a verification/certification, save for the verification or oath.
In their second brief, appellants urge that the repeal of N.J.S.A. 17:33A-6(b) must be deemed to have rendered it a nullity, so that the portion of the order which relied thereon was not statutorily authorized. Appellants say that a repeal of a statute takes away all remedies previously existing under that statute. See Parsippany Hills Assoc. v. Rent Leveling *133 Bd., 194 N.J. Super. 34, 42 (App.Div. 1984), certif. den. 97 N.J. 643 (1984). In consequence, they urge that the regulations adopted under N.J.S.A. 17:33A-1 should not be enforced. Although not cited to us, we recognize this argument as a form of the "time of decision" rule. See Kruvant v. Mayor & Council Tp. of Cedar Grove, 82 N.J. 435, 440-443 (1980). We note that the principle "is not inexorable." Id. at 442. Nonetheless, our analysis of the present case does not require that we resolve the question of effect of the statutory repeal upon the still-intact regulation at the time of the order of the trial judge, nor the effect of the time of decision rule upon our own appellate action. As we will explore below, we believe that the court's order is sustainable upon broader statutory authorization, and supported by sound public policy.
We hold that the trial judge correctly exercised his discretion, as the "cumbersome" policy which the Department of Insurance declined to itself enforce is consistent with N.J.S.A. 39:6A-13(b) and (g).
N.J.S.A. 39:6A-13(b) provides:
Every physician, hospital, clinic or other medical institution providing, before and after the bodily injury upon which a claim for personal injury protection benefits is based, any products, services or accommodations in relation to such bodily injury or any other injury, or in relation to a condition claimed to be connected with such bodily injury or any other injury, shall, if requested to do so by the insurer or the Unsatisfied Claim and Judgment Fund against whom the claim has been made, furnish forthwith a written report of the history, condition, treatment, dates and costs of such treatment of the injured person, and produce forthwith and permit the inspection and copying of his or its records regarding such history, condition, treatment dates and costs of treatment. The person requesting such records shall pay all reasonable costs connected therewith.
N.J.S.A. 39:6A-13(g) provides:
In the event of any dispute regarding an insurer's or the Unsatisfied Claim and Judgment Fund's or an injured person's right as to the discovery of facts about the injured person's earnings or about his history, condition, treatment, dates and costs of such treatment, or the submission of such injured person to a mental or physical examination, the insurer, Unsatisfied Claim and Judgment Fund or the injured person may petition a court of competent jurisdiction for an order resolving the dispute and protecting the rights of all parties. The order may be entered on motion for good cause shown giving notice to all persons *134 having an interest therein. Such court may protect against annoyance, embarrassment or oppression and may as justice requires, enter an order compelling or refusing discovery, or specifying conditions of such discovery; the court may further order the payment of costs and expenses of the proceeding, as justice requires.
As we interpret these statutes, on the facts of the present case, the order under review was well-justified.
Common sense dictates that an insurance carrier should exercise particular care in scrutinizing the claim of a wife whether medically, chiropractically or otherwise treated by her husband, particularly under circumstances where the insured requires it to litigate to get any record besides receipts showing the number, cost and types of treatment rendered. Where, as here, the insured declines examination, even by a "straight chiropractor" and where, as here, several reviewing chiropractors have questioned the duration and number of daily chiropractic treatments (as many as three times a day) rendered during a period when Virginia was apparently continuing to work, we think it consistent with the policy of the quoted sections that a trial judge permit verified or sworn discovery respecting the actual provision, need, nature and reasonable value of the chiropractic services. We suggest no fraud. The circumstances described, however, are uniquely vulnerable to fraud, and accordingly non-oppressive discovery is not only the right of the carrier, but in the public interest. Moreover, as this is a litigated matter, State Farm would be entitled to take the depositions of Chiropractor Dalton, under oath or verification. R. 4:14-1, R. 4:14-3. A deposition would be far more cumbersome, expensive and demanding of Daniel's time than this court order.
Appellants suggest that N.J.S.A. 39:6A-13(b) does not cover Dalton because he is not a "physician" and does not diagnose or use any medical terminology or procedures. They urge that the language of the statute so unambiguously excludes a "straight chiropractor" from its requirements that an amendment *135 would be necessary to make this statute applicable. We disagree.
N.J.A.C. 13:35-7.1 is the administrative regulation applicable to the practice of chiropractic. We note that the regulation, applicable to all chiropractors, uniformly uses the term "chiropractic physician" in imposing standards of practice. We assume that the Legislature is familiar with this long-standing regulation, and that Daniel does not contend that the regulation is inapplicable to him. See also N.J.A.C. 13:35-6.14 in which, for the purpose of that section, the words "physician" or "doctor" refer to doctors of medicine, doctors of osteopathic medicine, doctors of podiatric medicine, and doctors of chiropractic. The evidence shows that Daniel appropriately utilizes the initials "D.C."
A further argument made by appellants arises from another regulation of the Board of Medical Examiners, N.J.A.C. 13:35-6.5(b). This regulation requires a licensee of that board to deliver copies of records to the patient or a designated licensee or duly authorized representative. Appellants argue that it is the exclusive remedy to provide records or summary reports for patients. This regulation, however, merely sets forth a patient's right to his or her records. It neither expresses nor implies any limitation upon the rights of the Legislature or the courts to impose greater burdens upon licensed treatment providers. Even if the regulation purported to impose such limitation, an administrative body is without independent power to limit the exercise of legislative or judicial authority.
Moreover, this case arises out of the efforts of Virginia to secure payment for chiropractic services rendered to her after suffering an automobile accident in her covered vehicle. Her claim for PIP benefits is necessarily based upon N.J.S.A. 39:6A-4 which includes five categories of benefits within the "additional coverage" mandated therein. As her claim is not one for income continuation, essential services, survivor or funeral benefits, it must have been made under N.J.S.A. 39:6A-4(a) *136 which provides for "medical expense benefits." These are defined as "[p]ayment of all reasonable medical expenses incurred as a result of personal injury sustained in an automobile accident." Id. (emphasis added).
As defined in the same act, "`medical expenses' means expenses for medical treatment ... and other reasonable and necessary expenses resulting from the treatment prescribed by persons licensed to practice medicine and surgery ... or chiropractic ... or any nonmedical remedial treatment rendered in accordance with a recognized religious method of healing." N.J.S.A. 39:6A-2(e). Thus, the statute includes within the definition of "medical expenses" chiropractic services and even recognized religious healing methods.
When interpreting the phrase "physician, hospital, clinic or other medical institution" utilized in N.J.S.A. 39:6A-13(b), those charged with interpretation must be mindful of the broad definition given to the phrase "medical expenses" in the same statute. The statute must be interpreted consistently with its obvious intent, and with a constitutional construction. To suggest that only conventional medical doctors and facilities must comply with N.J.S.A. 39:6A-13(b) while others who provide services eligible as "medical expenses" under N.J.S.A. 39:6A-4(a) need not do so, is to deny equal protection of the laws to orthodox medical practitioners. No rational basis for such difference in treatment is suggested by the legislation, nor is one offered by appellants. We see no such basis for different treatment. All who furnish services which are the subject of a "medical expenses" claim must comply with N.J.S.A. 39:6A-13. And, as we previously stated, the facts of this case make it entirely reasonable under N.J.S.A. 39:6A-13(g) for the trial judge to have ordered that the information required by N.J.S.A. 39:6A-13(b) be verified or certified.
Daniel also argues that his "contract" with Virginia required her to handle all insurance requests for information. We agree with the trial judge that it is not for the patient to determine the nature of an injury or to certify that certain kind *137 or extent of treatment was reasonably necessary. Such information can only be provided by the treating professional. Again, the unique facts of this case in which the person who is asserted to have received payment for providing covered "medical services" is himself a named insured under the same policy and the husband of the person receiving those services, a trial judge in the exercise of judicial discretion may legitimately consider the potential for fraud, and the unlikelihood that an arms length contract was entered into as a pre-condition to the rendition of services.
Daniel also argues that he does not want to have direct contact with insurance companies and that he takes no "third-party assignments" as he prefers to deal only with his patients. He contends that the order of the trial judge is a due process deprivation of a right to deal only with those persons whom he chooses. This argument ignores his status as a licensee in an intensely regulated profession. The State's interest in success of the PIP program and in prevention of fraud justifies amply the requirements of N.J.S.A. 39:6A-13(b), particularly considering the ready availability of alternative discovery under the New Jersey Court Rules. There has been no deprivation of Daniel's due process rights.
Virginia argues that the order requiring her to submit to physical examination under N.J.S.A. 39:6A-13(d)[2] is unconstitutional as applied to her, because "a medical doctor and a chiropractic physician according to her religious beliefs, are *138 agents of Satan." She contends that while N.J.S.A. 39:6A-2(e) recognizes the compensability of non-medical remedial treatments, N.J.S.A. 39:6A-13(d) forces her as a person religiously opposed to ordinary medicine, to be examined by a "physician," thus unconstitutionally offending her free exercise of religion. Reminding us that a balancing process is required to test compelling governmental interests against the demands of the First Amendment (U.S. v. Lee, 455 U.S. 252, 257, 102 S.Ct. 1051, 1053, 71 L.Ed.2d 127, 132 (1982)), Virginia urges that religious freedom can be restricted "only to prevent grave and immediate danger to interests which the state may lawfully protect." West Virginia State Bd. of Educ. v. Barnette, 319 U.S. 624, 639, 63 S.Ct. 1178, 1186, 87 L.Ed. 1628, 1638 (1943).
Referring to the occasional tension between free exercise of religion and the interests of the state, our Supreme Court has concisely summarized the law: "Simply stated, the right to religious beliefs is absolute but conduct in pursuance thereof is not wholly immune from governmental restraint." In re Quinlan, 70 N.J. 10, 35 (1976). "The public interest is thus considered paramount, without essential dissolution of respect for religious beliefs." Id. at 36.
In Cantwell v. Connecticut, 310 U.S. 296, 303-304, 60 S.Ct. 900, 903, 84 L.Ed. 1213, 1218 (1939), the United States Supreme Court said: "Thus the [First] Amendment embraces two concepts,  freedom to believe and freedom to act. The first is absolute but, in the nature of things, the second cannot be. Conduct remains subject to regulation for the protection of society." The Court further stated: "Nothing we have said is intended even remotely to imply that, under the clock of religion, persons may, with impunity, commit frauds upon the public.... Even the exercise of religion may be at some slight inconvenience *139 in order that the state may protect its citizens from injury." Id. at 306, 60 S.Ct. at 904, 84 L.Ed. at 1219.
Legislation must be interpreted to achieve a constitutional result. In the present case, as applied to Virginia, the order under appeal states "that the defendant, Virginia Dalton, is hereby compelled to submit to a physical examination pursuant to N.J.S.A. 39:6A-13, by one of the five chiropractors listed on the attached list, unless plaintiff makes application to the Court indicating reasons why one of these said chiropractors should not conduct the examination."
We are satisfied that this form of order adequately protects the legitimate religious interests of Virginia under the First Amendment. Moreover, it demonstrates that N.J.S.A. 39:6A-13(d) is readily capable of a constitutional construction. We will not speculate on other hypothetical factual formulations which might test more closely the constitutional point of balance between public interest and First Amendment rights.
We are satisfied that the order under review was reasonably entered in this litigated matter, under the facts here present, consistent with the policies of our discovery rules and N.J.S.A. 39:6A-13.
Affirmed.
NOTES
[1] Both Virginia and Daniel are insured under the same State Farm policy.
[2] N.J.S.A. 39:6A-13(d) provides:

Whenever the mental or physical condition of an injured person covered by personal injury protection is material to any claim that has been or may be made for past or future personal injury protection benefits, such person shall, upon request of an insurer or the Unsatisfied Claim and Judgment Fund submit to mental or physical examination by a physician or physicians. The costs of any examination requested by an insurer or the Unsatisfied Claim and Judgment Fund shall be borne entirely by whomever makes such request. Such examination shall be conducted within the municipality of residence of the injured person. If there is no qualified physician to conduct the examination within the municipality of residence of the injured person, then such examination shall be conducted in an area of the closest proximity to the injured person's residence. Personal protection insurers are authorized to include reasonable provisions in personal injury protection coverage policies for mental and physical examinations of those claiming personal injury protection coverage benefits.