RIMM, J.T.C.
Plaintiff contests the denial by the Director of the Division of Taxation (Director) of its claim for a refund in the amount of $324,357.57 under the Corporation Business Tax Act, N.J.S.A 54:10A-1 to 40 (the Act), for the tax year ending August 12, 1988. Plaintiff, General Building Products Corporation (General Building), is the successor by merger to Dee Wood Industries, Inc. (Dee Wood). The claim presently before me arises as a result of the following filings:
1. The filing by Dee Wood of a State of New Jersey Corporation Business Tax Return, Form CBT-100 (CBT Return), for the taxable year beginning January 1, 1988 and ending August 12, 1988. This return was filed on June 15, 1989 and indicated a tax liability of $379,978.
*221 2. The filing by Dee Wood of an amended CBT Return for the taxable year beginning January 1, 1988 and ending August 12, 1988. This amended return was filed on March 27, 1990 and indicates a refund due of $354,688.
The matter is before me on a stipulation of facts, the submission of various documents, the submission of briefs and oral argument. For the purposes of this opinion, I have accepted as correct the amounts indicated by the parties for values and costs.
Dee Wood was incorporated in New Jersey on December 6, 1957. Its principal place of business was in Linwood, New Jersey, where it was involved in the lumber and millwork business. Prior to August 12, 1988, Dee Wood was a wholly-owned subsidiary of U.S. Home Corporation (U.S. Home), a Delaware corporation having its principal place of business in Houston, Texas. Plaintiff, General Budding, is a New York corporation having its principal place of business in Medford, New York.
By an agreement dated June 24, 1988, General Building and U.S. Home agreed that U.S. Home would sell all of its stock in Dee Wood to General Building for $16.8 million in cash, the price to be adjusted for variations in inventory and accounts receivable. The agreement contained in it, among other provisions, the following:
ARTICLE VI

ADDITIONAL COVENANTS

Section 6.01 Taxes:
(a) Section 888(h)(10) Election. Selling Shareholder agrees that, upon the written request of Purchaser, which request shall be submitted not less than ten (10) days prior to the Closing Date, it will cause the consolidated group of which Company is a member to make an election or join in making an election under Section 338(h)(10) of the Internal Revenue Code of 1986, as amended, to treat the sale of the Stock as a sale of assets for federal income tax purposes.
(e) Refunds. Any refunds of income taxes received by Company, including interest thereon, attributable to periods on or prior to the Closing Date that were not paid by Purchaser pursuant to Subsection 6.01(b)(2) hereof shall be for the benefit of Selling Shareholder, and Purchaser shall cause Company to pay over to Selling *222 Shareholder any such refunds within ten (10) days of receipt thereof. The Selling Shareholder shall have the right to determine whether any claim for refund for taxes paid with respect to a period ending on or prior to the Closing Date shall be made on behalf of the Company. If the Selling Shareholder elects to make such a claim for refund, the Purchaser and the Company shall cooperate fully in connection therewith and the costs in making such claims shall be borne by the Selling Shareholder.
The sale was completed on August 12,1988, and as a result, Dee Wood became a wholly-owned subsidiary of General Building. Effective November 23,1988, Dee Wood was merged into General Building by a Certificate of Merger filed with the New Jersey Secretary of State on November 16, 1988.
Prior to the sale, Dee Wood was included in the consolidated federal income tax return of its parent, U.S. Home. Under the Act, Dee Wood filed a separate CBT Return based on a separate computation of its taxable income.
Following the completion of the sale on August 12,1988, General Building and U.S. Home filed federal Form 8023 making a joint election under § 338(h)(10) of the Internal Revenue Code of 1986, as amended (§ 338(h)(10)), and under § 1.338 — lT(d)(l) of the Treasury Regulations in accordance with § 6.01(a) of the agreement dated June 24, 1988. Form 8023 was signed on behalf of General Building by its Vice President of Finance, on April 17, 1989. It was signed on behalf of U.S. Home by its Vice President of Tax, on May 8,1989. Form 8023 indicated that the name of the purchasing corporation was General Building and that the acquisition date was August 12, 1988. The form indicated that the target — or the entity acquired — was Dee Wood and that its book value was $8,991,180. The form also indicated that the common parent of the selling group was U.S. Home.
Section 338(h)(10) provides as follows:
Elective recognition of gain or loss by target corporation, together with nonrecognition of gain or loss on stock sold by selling consolidated group.—
(A) In general. — Under regulations prescribed by the Secretary, an election may be made under which if—
(i) the target corporation was, before the transaction, a member of the selling consolidated group, and
*223 (ii) the target corporation recognizes gain or loss with respect to the transaction as if it sold all of its assets in a single transaction,
then the target corporation shall be treated as a member of the selling consolidated group with respect to such sale, and (to the extent provided in regulations) no gain or loss will be recognized on stock sold or exchanged in the transaction by members of the selling consolidated group.
Under this section, a purchasing corporation and the seller of a controlled subsidiary that is at least 80% owned — in the present case there is a 100% owned subsidiary — can elect to treat the sale of the subsidiary’s stock as if it had been a sale of the underlying assets of the subsidiary. The selling corporation and its target subsidiary have to be members of an affiliated group filing a consolidated return for the taxable year that includes the sale date. If an election is made, the underlying assets of the target corporation are deemed to be sold, while the corporation is still a member of the group, by the corporation to itself for the price paid for the corporation’s common stock. The assets then receive a stepped-up basis in accordance with the sale price of the stock; the selling consolidated group recognizes any gain or loss attributable to the deemed sale of the assets; and there is no separate tax on the selling corporation’s gain attributable to the sale of the stock. Once made, the election is irrevocable. I.R.C. § 338(g)(3) (West Supp.1994).
Section 338(h)(10) offers taxpayers relief from potential multiple taxation at the corporate level of the same economic gain which could result when the sale of appreciated corporate stock was taxed without providing a corresponding step-up in the basis of the assets of the subsidiary corporation. For federal tax purposes, this is what was accomplished by U.S. Home and General Building; and, as a result of the merger of Dee Wood into General Building, General Building carries the assets of Dee Wood on its books at a stepped-up basis in accordance with the deemed sale of those assets.
The parties have stipulated that, absent the federal election under § 338(h)(10), U.S. Home would have recognized a federal income tax gain on the sale of its stock in Dee Wood equal to the difference between the amount realized and its adjusted basis in *224 Dee Wood’s stock, and Dee Wood would not have reported income from the deemed sale of assets nor received a basis step-up in its assets. As a result of the election, for federal income tax purposes: (a) Dee Wood was deemed to have sold all its assets to itself for the same amount that General Building paid for its stock; (b) Dee Wood recognized gain on the deemed sale of its assets, and the basis of the assets was stepped-up to an amount equal to the deemed sale price; (c) the asset sale was deemed to have taken place while Dee Wood was a member of the U.S. Home consolidated group such that the gain would be included in the income of the consolidated group; and, (d) U.S. Home recognized no gain on the sale of Dee Wood’s stock.
On June 15, 1989, General Building caused Dee Wood to file a short year CBT Return for the period ending August 12, 1988, indicating a total tax liability of $379,978. Line 28 of that return shows taxable income of $3,993,539. In the CBT Return, Dee Wood reported an ordinary gain of $3,603,975 resulting from a deemed sale of its assets to itself pursuant to a § 338(h)(10) election. The basis of the assets was their book value, and the deemed sale price was calculated based on the price paid by General Building to U.S. Home for the common stock of Dee Wood. Attached to Dee Wood’s short year CBT Return is U.S. Home’s U.S. Corporation Income Tax Return, Form 1120, for the 1988 tax year which bears the legend: “return filed in consolidated return for U.S. Home Corp.” Dee Wood’s federal taxable income in the amount of $3,778,439 and attributable to the deemed sale is reflected in Schedule C, line 4 of the CBT Return as income subject to tax not recorded on books this year from “gain on sale of assets based upon Sec. 338(h)(10) election.” The difference between the amount of gain reported for federal purposes and the amount of gain reported for New Jersey purposes was attributable to differing depreciation methods.
On September 6, 1989, U.S. Home filed a consolidated U.S. Corporation Income Tax Return, Form 1120, for the 1988 tax year for itself and its subsidiaries. Dee Wood is included in the return for the period January 1,1988 to August 12, 1988, prior to its sale *225 to General Building. Contained in the return is a summary of schedule M-l and M-2 information, line 5 of which pertains to Dee Wood and indicates “other income over book” in the amount of $3,778,439. Reported in the return, pursuant to the § 338(h)(10) election, is gain on the deemed sale of Dee Wood’s assets in the amount of $3,533,476. Pursuant to the § 338(h)(10) election, U.S. Home did not report any gain on the sale of the Dee Wood common stock.
For the tax year 1988, U.S. Home filed a CBT Return, attaching to it a copy of its 1988 U.S. Corporation Income Tax Return, Form 1120. Also attached to the U.S. Home CBT Return for 1988 is the following disclosure statement:
On August 12,1988, the taxpayer sold the stock of its wholly-owned subsidiary, Dee Wood Industries, Inc. and made a Federal election. Under Internal Revenue Code Section 338(h)(10). Notwithstanding the Division of Taxation’s announcement in the March/April 1989 New Jersey State Tax News, it is the taxpayers [sic] position that the starting point for determination of New Jersey net income is Federal Taxable income and there is authority for a New Jersey Modification on account of a Federal Section 338(h)(10) election. Accordingly, this return does not include any gain realized on the sale of the Dee Wood Industries stock.
The article referred to is N.J. Treatment of Election Under IRC Section 338, 18 New Jersey State Tax News 30 (March/April 1989). It is here quoted in full.
An accounting firm inquired about the Division of Taxation’s treatment of a Federal election made under Internal Revenue Code Section 338(h)(10). IRC Section 338 allows a corporation that has purchased a controlling interest (80 percent or more) in another corporation (“target”) to elect to have the acquisition of the target’s stock treated as a purchase of the target’s assets.
The target is treated as if it had sold its assets at a price determined by the purchasing corporation’s basis in the assets acquired from the target and the target recognizes a gain or loss on the deemed sale of its assets.
Where the target is part of an affiliated group filing consolidated returns (“selling group”), an alternative 338(h)(10) election allows the target’s deemed asset sale to be in the selling group’s consolidated return. Gain or loss on the deemed sale of assets is recognized by the selling group on its consolidated return and the selling group recognizes no gain or loss on the sale of target stock. The election is available to affiliated groups not filing consolidated returns to the extent to be provided in Federal regulations.
The Division pointed out that the New Jersey Corporation Business Tax Act (1945) does not allow for consolidated returns. New Jersey’s Administrative Code, N.J.A.C. 18:7 — 11.15(b), provides in pertinent part as follows: ‘Where a taxpayer has filed a consolidated return with the Internal Revenue Service for Federal *226 income tax purposes, it must complete its return under the act and must reflect its entire net income and entire net worth as if it had filed its Federal return on its own separate basis.”
It should be noted that other States may have addressed this situation in a different manner. For example, in California, IRC Section 388 was incorporated into State tax law by Ch. 1139, Laws of 1987. Since New Jersey does not have similar underlying statutory authority and does not recognize consolidated returns, New Jersey is unable to recognize the 338(h)(10) election.
The disallowance of the election may be illustrated by an example in which a New Jersey corporation sells a California subsidiary having no contact with New Jersey. New Jersey is not able to create a fiction allowing a New Jersey corporate taxpayer not to recognize gain on the sale of stock in its subsidiary. The issues at the State level are thus somewhat similar to those at the Federal level, which are addressed by disallowing corporations that are not located in the United States from entering into a consolidated return.

[Ibid.]

As a result of this article U.S. Home required General Building to file an amended CBT Return for Dee Wood for 1988 not recognizing the deemed sale of Dee Wood assets and seeking a refund of taxes previously paid on the gain of the deemed sale of the assets. The amended CBT Return was filed on March 27, 1990, for the period January 1,1988, to August 12,1988. A refund of $354,688 was claimed based on the non-recognition of the deemed sale of assets and on other minor items. The Division of Taxation allowed the refund in the amount of $30,330.43, only to the extent of items unrelated to the deemed sale of assets and denied the balance of the refund claim in the amount of $324,-357.57.
U.S. Home did not file an amended CBT return for 1988 reporting its gain on the sale of the common stock of Dee Wood. As of the date of the filing of the complaint in this matter, the State has not made any assessment against U.S. Home for taxes due on account of the gain it realized on the sale of the common stock of Dee Wood.
Submitted to me with other documents relevant to the matter, are the following tax returns:
1. U.S. Corporation Income Tax Return, Form 1120, for the fiscal year November 26, 1987, to November 23, 1988, for General Building and its subsidiaries.
*227 2. U.S. Corporation Income Tax Return, Form 1120, for the tax year 1988 for U.S. Home and its subsidiaries. This return does not include as income to the consolidated group the gain on the sale by U.S. Home of the stock of Dee Wood to General Building. This return does include the gain on the deemed sale of the assets of Dee Wood.
3. CBT Return, for U.S. Home for the tax year 1988. This return does not include as income to U.S. Home the gain on the sale of the common stock of Dee Wood to General Building.
4. CBT Return, for Dee Wood for the short year January 1, 1988, to August 12, 1988. This return includes the gain on the deemed sale of the assets of Dee Wood.
5. CBT Return, for Dee Wood for the short year August 12, 1988, to November 23, 1988. This return reflects the stepped-up basis for Dee Wood assets as a result of the deemed sale.
6. CBT Return, for Dee Wood for the short year January 1, 1988, to August 12, 1988. This return is dated March 27, 1990, and is the amended return on the basis of which plaintiff seeks a refund. This return does not include the gain on the deemed sale of the assets of Dee Wood.
7. U.S. Corporation Income Tax Return, Form 1120, for the fiscal year November 24,1988, to November 22, 1989, for General Building.
8. CBT Return for the fiscal year November 24, 1988, to November 22, 1989, for General Building.
9. U.S. Corporation Income Tax Return, Form 1120, for the fiscal year November 23,1989, to November 21,1990, for General Building.
10. CBT Return, for the fiscal year November 23, 1989, to November 21, 1990, for General Building.
Each return, federal or state for Dee Wood and General Building commencing with August 12, 1988, reflects the stepped-up basis for Dee Wood assets, and the related depreciation, based on the deemed sale elected under § 338(h)(10).
*228 There are also now in effect regulations relating to consolidated returns which have been codified as N.J.AC. 18:7-11.15 as follows:
(a) Corporations are not permitted to file consolidated returns. Provided, however, any business conducted by an individual, partnership, or corporation or any other entity, or any combination thereof holding a license pursuant to the Casino Control Act shall file a consolidated corporation business tax return as described at N.J.A.C. 18:7-1.17.
(b) Except as provided in (a) above, where a taxpayer has filed a consolidated return with the Internal Revenue Service for Federal income tax purposes, it must complete its return under the act and must reflect its entire net income and entire net worth as if it had filed its Federal return on its own separate basis.
(c) A taxpayer under (b) above shall also file a copy of the Affiliations Schedule Form 851, which is filed with Form 1120 for Federal income tax purposes.
(d) For New Jersey purposes, a selling parent in a consolidated group may not exclude gain on the sale of target stock pursuant to a federal election under IRC 338(h)(10). Each corporation is required to report income on a separate entity basis under N.J.A.C. 18:7-5.1(c).
(e) Where a target corporation recognizes gain as the result of an IRC 338(h)(10) election, the target reports and pays tax on such gain pursuant to N.J.A.C. 18:7-5.1(a).
These regulations were amended by R. 1991 d. 85, effective January 22, 1991, which added paragraphs (d) and (e). See 22 N.J.R. 2125(a), 23 N.J.R. 221(a).
N.J.AC. 18:7-5.1(a) provides as follows:
(a) “Entire net income” means total net income from all sources, whether within or without the United States, and includes:
1. The gain derived from the employment of capital or labor, or from both-combined, as well as
2. Profit gained through a sale or conversion of capital assets.
As set forth in N.J.AC. 18:7-11.15(a), corporations are not permitted to file consolidated tax returns in New Jersey. N.J.AC. 18:7-5.1(c) also provides as follows:
Consistent with N.J.A.C. 18:7-11.15, entire net income shall be determined on a separate entity basis as if the contemporaneous Federal return had not been a consolidated return.
The statutory basis for this prohibition is in the Act, specifically, N.J.S.A 54:10A-2 which provides in part as follows:
Every domestic or foreign corporation which is not hereinafter exempted shall pay an annual franchise tax for the year 1946 and each year thereafter, as hereinafter provided, for the privilege of having or exercising its corporate franchise in this State, or for the privilege of doing business, employing or owning capital or property, or maintaining an office, in this State____
*229 Entire net income is defined, in pertinent part, in the Act as follows:
“Entire net income” shall mean total net income from all sources, whether within or without the United States, and shall include the gain derived from the employment of capital or labor, or from both combined, as well as profit gained through a sale or conversion of capital assets. For the purpose of this act, the amount of a taxpayer’s entire net income shall be deemed prima facie to be equal in amount to the taxable income, before net operating loss deduction and special deductions, which the taxpayer is required to report to the United States Treasury Department for the purpose of computing its federal income tax; ----
[N.J.S.A 54:10A-4(k).]
In furtherance of this provision, N.J.S.A 54:10A-14 gives the Director the right to require the submission of copies or pertinent extracts of federal income tax returns or other records.
The Act taxes corporations based on evidence of “the potential of the corporation for doing business under the franchise with the sanction and protection of the laws of this State.” United States Steel Corporation v. Director, Div. of Taxation, 38 N.J. 533, 540, 186 A.2d 266 (1962) (citing Werner Machine Co. v. Director, Div. of Taxation, 17 N.J. 121, 127, 110 A.2d 89 (1954), aff'd, 350 U.S. 492, 76 S.Ct. 534, 100 L.Ed. 634 (1956)). If corporations were permitted to file consolidated returns
[t]he resulting tax would depend upon group holdings and group activity and would not reflect a payment for individual corporate charters and privileges____[and] it would virtually eliminate the tax for corporate privileges exercised by any but the parent corporation. Because consolidation would combine allocation factors as well as balance sheet accounts, it would enable corporate families operating on a national or international basis to escape all but a nominal tax in New Jersey.
[Id. 38 N.J. at 546, 186 A.2d 266 (quoting Second Report of the Commission on State Tax Policy at 97 (1947)) (emphasis added).]
The position of the Director in Volume 18 of the New Jersey State Tax News referred to by defendant was elaborated on in an article entitled Division Explains Effect of IRC Section 338 Election, 19 New Jersey State Tax News 53 (May/June 1990). It is here also quoted in full.
In response to questions from several taxpayers, the Division of Taxation is issuing an elaboration concerning Internal Revenue Code (IRC) Section 338(h)(10) that appeared in the March/April 1989 New Jersey State Tax News, p. 30. The following background is from that previous article:
*230 “IRC Section 338 allows a corporation that has purchased a controlling interest (80 percent or more) in another corporation (‘target’) to elect to have the acquisition of the target’s stock treated as a purchase of the target’s assets.
“The target is treated as if it had sold its assets at a price determined by the purchasing corporation’s basis in the target’s stock. The purchasing corporation receives a stepped-up basis in the assets acquired fi-om the target and the target recognizes a gain or loss on the deemed sale of its assets.
“Where the target is part of an affiliated group filing consolidated returns (‘selling group’), an alternative 338(h)(10) election allows the target’s deemed asset sale to be included on the selling group’s consolidated return. Gain or loss on the deemed sale of assets is recognized by the selling group on its consolidated return and the selling group recognizes no gain or loss on the sale of target stock. The election is available to affiliated groups not filing consolidated returns to the extent to be provided in Federal regulations.”
The Division explained that New Jersey’s Corporation Business Tax Act (1945) is a franchise tax for the privilege of having or exercising a corporate franchise in New Jersey or for the privilege of doing business, employing or owning capital or property or maintaining an office in New Jersey. Entire net income is to be determined on a separate entity basis as if the contemporaneous Federal return had not been a consolidated return. [See N.J.A.C. 18:7-5.1(c) and N.J.A.C. 18:7-11.15(b).]
Accordingly, because consolidated returns are not permitted in New Jersey, the Division noted in the March/April 1989 New Jersey State Tax News article that a parent corporation selling the stock of a subsidiary would recognize gain on the sale of the target’s stock.
Concerning the target, it is important to note, however, that although the IRC 338(h)(10) election is not recognized by New Jersey, the IRC 338 election (Form 8023) is given effect in the following manner.
Where the target corporation recognizes a gain on the step-up in its assets, which it then depreciates, the target must recognize such gain for New Jersey purposes. Each corporation is thus taxed as a separate entity for New Jersey purposes.
To facilitate review of the target’s return and to minimize compliance costs on the taxpayer, a one-day report shall be filed by the target with the Division reflecting the step-up in basis. This report should be filed within months of the period unless an extension has been obtained. An automatic six-month extension is provided through filing, with a tax remittance, a CBT-200T tentative return and an application for an extension of time to file the CBT return. In this context, the extension will be effective until the federal election is filed.
After the filing of a consolidated return with the Internal Revenue Service and the filing of any short-period returns with the Internal Revenue Service (required because of the consolidated return), the New Jersey Division of Taxation requires the filing of amended returns as necessary to conform with the short-period return filed with the Internal Revenue Service. (New Jersey State Tax News, June/July 1974, p. 43).
New Jersey uses a three-fraction computation for allocation. As a practical matter in the context of a one-day return, the business allocation factor would be *231 based on the property fraction (reflecting location of the assets) and the receipts fraction (sourced to the location of the assets). There would be no payroll fraction for the short, one-day period. (See also N.J.A.C. 18:7-12.3.)
[M at 53-54.]
I
On oral argument, plaintiff stated that
It is our position that § 338(h)(10) is not recognized by the State of New Jersey and as such there is no basis for saying that there is a gain. 338(h)(10) is merely a vehicle for use by consolidated groups — and if the State does not recognize the consolidated groups or consolidated filing, then the entire Section is not recognized. Absent the recognition, there’s no basis for the taxation.
Plaintiff strenuously argues this position in its trial brief, supplemental trial brief, and final brief, relying on various provisions of the Internal Revenue Code. Reduced to its essentials, plaintiff’s argument is that the consequences of the § 338(h)(10) election cannot be recognized in New Jersey because New Jersey does not permit consolidated returns, and the election is only available under federal law if the seller and target corporations are members of an affiliated group which files a consolidated tax return. Hence, plaintiff argues, for New Jersey purposes, neither the election nor the deemed sale can be recognized. It follows, plaintiff further argues, that the CBT Return which Dee Wood filed for the short year ending August 12, 1988, and which reported gain on the deemed sale, was in error under New Jersey law; the amended return correctly reflects the income of Dee Wood for the short year ending August 12,1988; and Dee Wood is entitled to the claimed refund payable to plaintiff.
II
Defendant claims that an election under § 338(h)(10) requires the target corporation to file a CBT Return reporting the gain on the deemed sale of its assets. The Director’s position is: (1) the New Jersey State Tax News article is an incorrect explanation of the law of New Jersey to which the Director is not bound; (2) Dee Wood, in any event, was not impacted in any way by the article in filing its 1988 short year CBT Return in which it reported gain on the deemed sale of its assets; and, (3) the correct interpretation of *232 the Act and its relationship to § 338(h)(10) is now set forth in the regulations. Defendant argues that in accordance with N.J.AC. 18:7-11.15(e), Dee Wood, the target corporation, must include in its entire net income, report and pay tax on the gain resulting from the deemed sale under the § 338(h)(10) election.
Defendant agrees that affiliated groups are not allowed to file consolidated returns in New Jersey. Defendant, however, argues that New Jersey is entitled to tax plaintiff on the basis that, once the § 338(h)(10) election is made, the target’s books of account are changed to reflect the consequences of a sale of its own assets to itself. Specifically, the books are changed to reflect a gain on the sale of the assets and a corresponding step-up in the basis of the assets. Defendant also argues that this gain must be recognized, and since New Jersey does not permit consolidated returns, Dee Wood must report it individually. Reduced to its essentials, defendant’s argument is that the deemed sale election comes about as a result of a business decision set forth in the contract between plaintiff and U.S. Home; that the tax consequences in New Jersey of that business decision are correctly reflected in the original short-year return filed by Dee Wood; and that Dee Wood and plaintiff are bound by that business decision and the tax consequences which flow from it. General Trading v. Director, Div. of Taxation, 83 N.J. 122, 136-138, 416 A.2d 37 (1980). (A corporate taxpayer cannot avoid the unexpected adverse tax consequences of its business decisions.)
Ill
This case was presented to me as though N.J.AC. 18:7-11.15(d) and (e) were in effect at all times pertinent to the case although they were not effective until January 22, 1991. Defendant argues that subparagraph (e) requires Dee Wood to report and pay tax on the gain recognized by it as a result of the § 338(h)(10) election. Defendant also argues that subparagraph (d) involves a separate transaction which is taxable because each corporation must report and pay tax in New Jersey on a separate entity basis. Plaintiff, on the other hand, argues that the regula *233 tions are an invalid exercise of the Director’s authority because: (1) consolidated returns are not permitted in New Jersey and therefore New Jersey cannot in any way recognize the effect of a § 338(h)(10) election which can only occur under federal law in the context of the filing of a consolidated return; and (2) subpara-graph (d) might apply to require U.S. Home to pay taxes on the sale of Dee Wood stock, thus contradicting the results intended by § 338(h)(10) election under federal law.
Even though both parties dealt with the regulations as applicable, it is incumbent upon me to address their retroactive application. The regulation is not a “legislative regulation,” adopted by the Director in accordance with a delegation of such power by the Legislature. See Metromedia v. Director, Div. of Taxation, 97 N.J. 313, 334, 478 A.2d 742 (1984). Cf. N.J.S.A. 54:10A-8(e) (The Director is authorized to adjust an allocation factor in a manner calculated to achieve a fair result.). The subject regulation is an interpretive regulation construing the Act. It therefore applies to the facts of this case. Richard’s Auto City v. Director, Div. of Taxation, 12 N.J.Tax 619, 640-641 (Tax 1992), rev’d. on other grounds, 270 N.J.Super. 92, 636 A.2d 572 (App.Div. 1994), certif. granted, 137 N.J. 167, 644 A.2d 614 (1994).
The regulations are also presumptively reasonable. Citing New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 560-63, 384 A.2d 795 (1978), Richard’s Auto City, supra, set forth standards applicable to judicial review of the validity of regulations promulgated by an administrative agency. They are as follows, also pertinent to this case:
(1) Administrative regulations are to be accorded a presumption of reasonableness, and the attacking party bears the burden of demonstrating that the regulations are arbitrary, capricious, unduly onerous or otherwise unreasonable. Id. at 561, 384 A2d 795.
(2) Regulations must be within the fair contemplation of the enabling statute, but the court is not confined to a consideration of the statutory authority for a particular regulation, but may consider the entire enabling legislation. Id. at 561-62, 384 A 2d 795.
(3) The grant of authority to an administrative agency is to be liberally construed in order to enable the agency to accomplish its statutory responsibilities, *234 and the courts should readily imply such incidental powers as are necessary to effectuate fully the legislative intent. Id. at 561, 384 A2d 795.
(4) Courts are not free to substitute their judgment as to the wisdom of a particular administrative action for that of the agency so long as the action is statutorily authorized and not otherwise defective because arbitrary or unreasonable. Id. at 562-63, 384 A.2d 795. See also, Sorenso[e]n v. Taxation Div. Director, 2 N.J.Tax 470, 474-75, 184 N.J.Super. 393, 446 A.2d 213 (Tax 1981).
[Id. at 627.]
In light of the criteria, I conclude that the regulations at issue in this ease are a valid exercise of the authority granted the Director, Division of Taxation under the Act. See N.J.S.A. 54:10A-27. (The Director shall issue such regulations for the interpretation and application of the provisions of the Act as he may deem necessary.).
Even absent the regulations, the Director’s denial of the refund claim is, to paraphrase State Farm v. Dalton, 234 N.J.Super. 128, 560 A.2d 683 (App.Div.), cert. denied, 117 N.J. 664, 569 A.2d 1356 (1989), and cert. denied, 493 U.S. 1078, 110 S.Ct. 1131, 107 L.Ed.2d 1037 (1990), “[a]s [I] will explore below, ... sustainable upon broader statutory authorization, and supported by sound public policy.” 234 N.J.Super. at 133, 560 A.2d 683.
IV
Dee Wood wás a member of an affiliated group of corporations filing a federal consolidated return, U.S. Home being the parent corporation. As a result of a joint election by plaintiff and U.S. Home, Dee Wood was deemed to have sold its assets to itself while its common stock was still owned by U.S. Home, thus triggering a gain and permitting a corresponding step-up in the basis of those assets. On these facts, the question before me is whether Dee Wood’s “deemed gain” is recognizable in New Jersey.
New Jersey’s prohibition against consolidated returns does not immunize Dee Wood from state taxation of any gain realized as a result of the deemed sale of its assets. It merely requires that the tax consequences of the deemed sale be independently reported by Dee Wood. The original CBT Return for the State of New Jersey filed by Dee Wood for January 1, 1988, to August 12, *235 1988, reflecting the gain in the books of account of Dee Wood of the deemed sale of its assets to itself and reflecting the stepped-up basis of those assets, represents the correct tax consequences under the Act and the applicable regulations of the deemed sale and the election under § 338(h)(10). The election was based on the contract entered into between U.S. Home and General Building. Pursuant to the election, Dee Wood’s books of account were changed to reflect a higher asset basis; and General Building, by virtue of its merger with Dee Wood, had the benefit of a higher basis for depreciation of the assets subject to the step-up in basis as a result of the 338(h)(10) election.
The parties made the § 338(h)(10) election and are bound to accept the consequences which flow from it under the Act. General Trading v. Director, Div. of Taxation, supra; Rinier v. State of New Jersey, 273 N.J.Super. 135, 641 A.2d 276 (App.Div.1994) (If an election is made to file a joint federal income tax return, a joint state income tax return must be filed under the New Jersey Gross Income Tax Act, N.J.S.A. 54A:1-1 to 10-12.). In this case, because of New Jersey’s prohibition of consolidated returns, one consequence of plaintiffs and U.S. Home’s decision to make a § 338(h)(10) election is that Dee Wood must independently report the gain from the deemed sale. Any other result would deprive the State of New Jersey of taxes to which it is legitimately entitled. Indeed, U.S. Home would profit at the state’s expense. Section 6.01(e) of the agreement between U.S. Home and General Building pertains to refunds and provides that U.S. Home is entitled to any refund derived from this litigation. If, however, U.S. Home receives a refund of taxes paid on the deemed sale, it will escape taxation in New Jersey, despite substantial gain derived from the sale of Dee Wood’s common stock, because U.S. Home did not file an amended CBT Reten for the period of January 1, 1988, to August 12, 1988, reporting the gain it derived from the sale of Dee Wood’s common stock.
V
Actually, the application of N.J.A.C. 18:7-11.15(d) to U.S. Home is not before the court. The nature of the regulations, however, *236 requires me to note what is actually the taxation of two different transactions.
By way of background, there is an alternative election available in cases of “qualified stock purchases” regardless of whether or not the target is a member of a selling consolidated group. Currently, under I.R.C. § 338(a) (§ 338(a)) a purchasing corporation can unilaterally elect to cause a deemed sale of a target’s assets while the target is in the purchaser’s hands. The tax consequences of such an election are that the sale of a target’s stock is taxable to the seller, and gain on the deemed sale of the target’s assets is taxable to the target while it is in the purchaser’s hands.
This was not always so. Prior to 1986, by independent operation of I.R.C. § 337, gain on a deemed sale occurring pursuant to a § 338(a) election was not recognized. I.R.C. § 337 was a provision of the 1954 code based on the General Utilities doctrine, under which no gain was recognized on certain sales of assets that occurred in the context of a corporate liquidation. See General Utilities & Operating Co. v. Helvering, 296 U.S. 200, 56 S.Ct. 185, 80 L.Ed. 154 (1935) (Corporations need not recognize gain or loss on a distribution of appreciated or depreciated property to its shareholders.). The Tax Reform Act of 1986, however, repealed most of the Internal Revenue Code sections codifying the General Utilities doctrine, including § 337, thus resulting in the current § 338(a) election. While it is true that the current § 338(a) election results in a form of “double taxation,” such taxation is precisely what Congress intended. Of course, the § 338(a) election is not favored by purchasing corporations. See generally Boris I. Bittker and James S. Eustice, Federal Income Taxation of Corporations and Shareholders 11-61 to 11-75 (5th ed. 1987).
However, with respect to the § 338(h)(10) election, taxing both the stock sale and the deemed sale was not the intention of Congress. The purpose of the § 338(h)(10) election is to avoid taxation of both transactions by exchanging recognition by the seller of gain on the stock sale and corresponding step-up in the basis of the stock for recognition by the seller of gain on the *237 deemed sale of the assets and corresponding step-up in basis of the assets. Indeed, “[b]y treating a sale of stock as a sale of assets, § 338(h)(10) reaches substantially the same result, so far as basis is concerned, as would have been achieved if the selling corporation had liquidated the target subsidiary ... and then sold the assets to the purchasing corporation.” Bittker & Eustiee, supra, at 11-66.
Under the Act, the Director has adopted regulations which would tax both the stock sale and the deemed sale. Under subsection (d), the selling parent in a consolidated group may not exclude its gain on the sale of the common stock of the target corporation pursuant to § 338(h)(10). Under subsection (e), the target corporation recognizes gain from the deemed sale occurring as a result of the § 338(h)(10) election and reports and pays tax on the gain pursuant to N..J.AC. 18:7-5.1(a).
The fact that the state tax consequences of a § 338(h)(10) election differ from the federal tax consequences of that election is not necessarily unacceptable. Divergences between federal and state taxation can result from fundamental differences between state and federal tax systems. For example, although the State accepts the federal premise that certain assets should be deprecia-ble, each taxing authority uses different depreciation schedules, resulting in different amounts of tax. Regarding tax scheme divergence, Judge Andrew has stated:
There is no support for the proposition that federal income taxation concepts are the definitional source of the tenns utilized in the New Jersey act____
While the starting point for determination of entire net income under the act is taxable income, before net operating loss deduction and special deductions, which the taxpayer is required to report for Federal income tax purposes, the Corporation Business Tax deviates from the federal tax by providing its own inclusions and exclusions from the tax base____ Only at the initial point is it indicated that the Legislature intended that federal standards were to be controlling.
[International Flavors & Fragrances v. Taxation Division Director, 5 N.J.Tax 617, 624 (Tax 1983), aff'd, o.b., 7 N.J.Tax 652 (App.Div.1984), aff'd, 102 N.J. 210, 507 A.2d 700 (1986) (emphasis added).]
A classic example of the different treatment of income for tax purposes between federal law and state law is evident in the treatment of Subehapter S corporations. Under federal law, if *238 certain requirements were met, a corporation could elect to be taxed as a Subchapter S corporation. If such an election were made under federal law, unlike other corporations, the income of such corporations was not taxed. The income was considered distributed to the stockholders and taxed to them in their individual tax returns. The income of the corporation was, for tax purposes, passed through to the stockholders in accordance with their respective percentage of stock ownership. I.R.C. § 1361 to § 1378 (West Supp.1994).
Until recently, however, New Jersey did not recognize Subchap-ter S corporations. The result of such non-recognition was that the same income taxed once under federal law in the context of a corporation making a Subchapter S election was taxed as though there were two separate transactions: income was taxed to the corporation under the Act and income distributed by the corporation to the stockholders was taxed to the stockholders under the Gross Income Tax Act. N.J.S.A 54A:1-1 to 10-12. The recent change in New Jersey law now basically follows the Federal law. L. 1993 c. 173; N.J.S.A. 54:10A-4 and 5.
However, I need not explore this issue any further because this is not a case in which the state seeks to apply N.J.AC. 18:7-11.15(d) and tax the gain on the sale of common stock of the target corporation. That issue is simply not before me. In Union City Associates v. City of Union City, 115 N.J. 17, 556 A.2d 769 (1989), a taxpayer simultaneously filed a petition of appeal in a county board of taxation and a direct appeal with the Tax Court. Ancillary to the issue of whether simultaneous filings were permissible, was the question of what happens when one party appeals to the Tax Court and the other party appeals to a county board of taxation. In declining to resolve the second issue, our Supreme Court said, “[w]e need not decide such a case at the present time. The only issue before us is whether the same taxpayer may file an appeal in both the county board and the Tax Court.” Id. at 25, n. 4. Similarly, I will not resolve any issues that are not before me.
*239 VI
The franchise tax to be paid annually by a corporation in accordance with the Act is a percentage of its “entire net income” calculated in accordance with N.J.S.A 54:10A-5(c)(l). As defined, “entire net income” is “deemed prima facie to be equal in amount to the taxable income, before net operating loss deduction and special deductions, which the taxpayer is required to report to the United States Treasury Department for the purpose of computing its federal income tax; ____” N.J.S.A 54:10A-4(k).
For the year 1988, Dee Wood did not file a federal income tax return. Its income was reported in the corporation income tax return filed by U.S. Home for “U.S. Home Corporation & Consolidated Subs.” The taxable income before net operating loss deduction and special deductions, hereinafter referred to as line 28 income, reported on this return therefore includes such income for U.S. Home and all of its subsidiaries.
There are attached to the corporate return various schedules relating to U.S. Home and its subsidiaries. Among other things, they indicate that Dee Wood is wholly owned by U.S. Home and that its principal business activity is that of a wholesaler and manufacturer. The return also indicates that U.S. Home disposed of all its stock in Dee Wood in 1988.
There is also attached to the return a schedule denominated “Income Statement for Period Ending December 31, 1988, Form 1120, Page 1.” A partial list of the items under the column in the schedule for “Dee Wood Ind., Inc.” is as follows:
Gross Profit $3,224,385
Ordinary Gains $3,878,657
Total Income $7,479,199
Total Income (after deductions) $3,993,539..
In addition to the above information readily ascertainable from the consolidated return, there is attached to the short year CBT return for Dee Wood a pro forma Form 1120, U.S. Corporation Income Tax Return, for the period of time from January 1, 1988, *240 to August 12,1988. The return lists Dee Wood Industries, Inc. as the taxpayer and contains on it the following legend: “Return filed in consolidated return for U.S. Home Corp. FEI # 21-0718930.” Page one of this pro forma return lists $3,993,539 as line 28 income. This is exactly the same figure in the U.S. Home consolidated return for Dee Wood’s total income after deductions. The pro forma return also has a Form 4797, Sales of Business Property, attached to it. This form indicates ordinary gains in the amount of $3,878,657; which corresponds exactly to the ordinary gains listed for Dee Wood in the U.S. Home consolidated return. The entire ordinary gain listed resulted from the deemed sale on August 12, 1988, and part of the gain is listed as “Gain From Disposition of Property Under Sections 1245,1250,1252,1254 and 1255.”
In sum, General Building and U.S. Home voluntarily made the § 338(h)(10) election. The result of that election was a deemed sale of Dee Wood’s assets. The tax benefit of the election was that after the “sale,” Dee Wood held its assets at a stepped-up basis. For federal purposes, gain from the deemed sale could be reported in U.S. Home’s consolidated tax return. For state purposes, however, this was not an option. New Jersey does not allow consolidated returns. Consistent with the law prohibiting consolidated returns, Dee Wood was required to report the gain separately under the Act. General Building cannot now, after irrevocably making the § 338(h)(10) election and availing itself of a higher basis in Dee Wood’s assets, argue that New Jersey is not entitled to tax the transaction in a manner consistent with its laws.
VII
New Jersey is not bound to federal income tax treatment and is not the only state whose treatment of a § 338(h) (10) election differs from that of the Internal Revenue Service. In Peter L. Faber, State and Local Income and Franchise Tax Aspects of Corporate Acquisitions 471 (PLI Tax Law & Practice Course Handbook Series No. J-341, Vol. 1, 1993), the author points out that in planning corporate acquisitions, state tax conse *241 quences are often ignored or addressed too late. Of course, those consequences must be accepted under our law. General Trading v. Director Div. of Taxation, supra. Specifically, Mr. Faber explains that states have approached § 338(h)(10) elections differently.
(i) In New York, T [target corporation] must file two reports: one for the short year ending with and including the day on which the deemed sale occurs, and one for the rest of the year. The gain is included in the selling parent’s combined report with T if combined reports are filed. The sale of T stock by the parent is not ignored, but it is ordinarily not taxed because gains from the sale of subsidiary stock are not taxable in New York. TSB-M-91(4)(C) (April 17,1991); Regs. §§ 3-2.2, 6-2.7,18-2.2, 21-2.7. New York City takes the same position. Ruling No. X-2-006-001 (September 24, 1990)
(ii) California allows the corporations to elect section 338(h)(10) treatment or not, regardless of whether they have elected section 338(h)(10) treatment for federal purposes. CaLRev. and Tax.Code §§ 23051.5(g), 24519. FTB Chief Counsel Ruling Cl-88-254 (November 15, 1988). The choice may depend on the relative bases of T in its assets and of T’s parent in T’s stock and whether it would be preferable to have the gain treated as business or nonbusiness income.
(in) Some states automatically accept the the section 338(h)(10) election if it is made for federal purposes. See, e.g., Ga.Code § 48 — Y—21(b)(7); Virginia, Ruling of Commissioner P.D. 91-317 (1991), reported at CCH Virginia State Tax Reporter H 202-115; Illinois Private Letter Rulings 89-0306 and 89-0222.
(iv) Some states do not allow section 338(h)(10) treatment, thus imposing a double tax as if a regular section 338 election had been made. See, e.g., N.J. Regs. §§ 18:7-11.12, 18:7-11.15, 18:7-12.1, and 18:7-12.3; N.C. Dep’t of Rev. memorandum June 21, 1991, reported at Tax Notes Highlights & Documents December 22, 1992; Ore Admin. Rules § 150-317.329(5) (if T and its parent are not engaged in a unitary business or do not file a consolidated Oregon return).
[Id. at 483-486.]
To similar effect is Philip M. Tatartowicz, State Tax Treatment of Taxable Stock Acquisitions, Conference on State and Local Taxation, N.Y.U. (1990). Different states have expressly given different treatment to § 338(h)(10) elections from that of the Internal Revenue Service.
1. New Jersey. Because New Jersey does not recognize Federal consolidated returns, the entire net income is to be determined on a separate entity basis as if the contemporaneous Federal return had not been a consolidated return. Accordingly, a parent corporation selling the stock of a subsidiary would recognize gain on the sale of the target’s stock.
Although a Section 338(h)(10) election is not formally recognized by New Jersey as such, the Section 338 election is nevertheless given effect as follows: “Where the target corporation recognizes a gain on the step-up in its assets, which it then depreciates, the target must recognize such gain for New Jersey purposes. Each *242 corporation is thus taxed as a separate entity for New Jersey purposes.” May/ June 1990 New Jersey State Tax News, p. 53, clarifying Mareh/April 1989 New Jersey State Tax News, p. 30.
2. New York. The Federal treatment accorded a Section 338(h)(10) election will be followed only where the Federal selling consolidated group is the same as the New York State combined group. Where the Federal selling consolidated group is not the same as the New York State combined group, or where all or some of the members of the selling consolidated group file on a separate basis in New York, the Section 338(h)(10) election will be disregarded, but the purchaser’s Section 338(g) election will still be given effect. Thus, the target corporation will recognize gain from the deemed sale of its assets and will achieve the gross-up in the basis of those assets. In a case where the Section 338(h)(10) election is disregarded, gain on the stock sold by the Seller would ordinarily be recognized. However, because N.Y.Tax Law Section 208.9(a) exempts gains and losses from subsidiary capital from the franchise tax, such gain typically would be excluded. See TSB-M-87(4)C (4/10/87).
[Note: There are reports that New York State is considering changing its position, with the result that even if the Federal/state selling group is identical, gain will be recognized on the deemed asset sale by target and gain will be recognized by the selling group on the actual stock sale (although gain on the sale of stock generally will be excluded under the subsidiary capital exclusion). This position would be similar to the recent New York City position set forth in FLR-(44)-GCT.j
3. California. California will recognize a Section 338(h)(10) election in all cases where the election is allowed for Federal purposes. However, by making the election at the state level, the seller agrees to be the transferee of the target and is responsible to the target for the payment of any taxes on the target’s behalf resulting from the deemed sale of assets. The parties may also jointly elect not to have the Federal provisions apply for California purposes. FTB Ruling CR-88-254 (11/15/88).
4. Illinois. The DOR will allow corporate taxpayers making a Section 338(h)(10) election for Federal purposes to malee that election for Illinois purposes. However, the tax on the asset gain will shift to the selling group in its entirety only if the target files an Illinois combined return with the selling group for the tax period immediately preceding the sale of the target.
The asset gain from the deemed sale of assets will be reported on the selling group’s Illinois return if a combined return is filed by the selling group that includes the target. Otherwise, the asset gain will be reported entirely on the target’s separate Illinois return (if a separate nonunitary return), and will be reported on the target’s and every other member’s separate Illinois return (if separate unitary returns are filed by a selling group that includes the target). Illinois DOR general information letter dáted (5/24/89).
5. Ohio. Because Ohio does not recognize the Federal consolidation statutes and regulations, the Section 338(h)(10) election is irrelevant for purposes of filing an Ohio franchise tax combined report. This is because the ownership requirements necessary for corporations to file a combined Ohio franchise tax report must be met on January 1 of the Ohio franchise tax report year. Thus, for a qualified stock purchase in calendar year 1989 for which a Federal Section 338(h)(10) election had been made, the selling group could not combine with the target since on January 1, *243 1990 the selling group no longer owns target. Even though for Federal purposes target corporation would file two short-period returns for calendar 1989, only one Ohio franchise tax report would be filed for the same period. Moreover, the Ohio franchise tax report would include the gain or loss from the deemed asset sale because it is based on “line 28” income for both Federal short-period returns. Letter by Tax Commissioner Joanne Limbach to practitioner (10/30/89).
[Id. at 19-21.]
VIII
General Building is not entitled to the refund it seeks. The complaint is dismissed.